# ELLIOTT S. FLOOD

# TEXTBOOK EXCERPTS

# EXCERPTS FROM
# *THE CLAIMS ENVIRONMENT*

(1st Ed. 1993)
Insurance Institute of America
James J. Markham, Kevin M. Quinley, Layne S. Thompson

## PREFACE

| | |
|---|---|
| vii | "Claim representatives . . . are the people responsible for fulfilling the insurance company's promise . . ." |
| vii | "This text . . . describes the issues, skills, and concerns common to all claims." |
| vii | "Claim representatives must investigate the facts of specific claims to determine coverage, legal liability, damages, and reserves." |

## CHAPTER 1 – INSURANCE AND THE CLAIM REPRESENTATIVE'S ROLE

| | |
|---|---|
| 1 | "Insurance is a vital part of modern life." |
| 2 | "In the insurance transaction, an individual or a business pays a premium in an amount it can afford to an insurance company that agrees to accept all or a portion of the financial impact of that person's or business's risks of loss." |
| 2 | "In addition to eliminating or reducing the financial uncertainty of risks to individuals and businesses, insurance benefits society by paying for losses, providing funds for investments, controlling losses, supporting credit, allocating resources, and satisfying legal and business requirements." |
| 5 | "The essential function of a claim department is to fulfill the insurance company's promise, as set forth in the insurance policy." |
| 5 | "A special relationship is formed between the insurance buyer and the insurance company in an insurance transaction." |
| 5 - 6 | "The insurance transaction . . . is generally considered a personal transaction requiring complete honesty and full disclosure by both parties . . . both the insurance buyer and the insurance company expect utmost good faith and fair dealing from one another." |

| | |
|---|---|
| 6 | "When a covered loss occurs, the insurance company's obligation under its promise to pay is triggered. The claim function should ensure the prompt, fair, and efficient delivery of this promise." |
| 6 | "The insured expects to be paid promptly and in full." |
| 8 - 9 | "In order to fulfill the insurance company's promise, a claim representative must follow a systematic process for gathering information and must be proficient in resolving issues of coverage, legal liability, and damages." |
| 9 | "Following are four tasks the claim representative must accomplish:<br>1. Investigation<br>2. Evaluation of coverage, liability and damages<br>3. Negotiation or alternative dispute resolution (ADR) to achieve settlement<br>4. If necessary, litigation management" |
| 9 | "**Investigation.** When a claim is presented, the claim representative must carry out a basic background and factual investigation." |
| 9 | ". . . the primary function of a claim representative is to pay promptly and fairly . . ." |
| 9 | ". . . claim representatives must investigate the facts of each claim because policyholders do not know exactly what is covered, under exactly what circumstances it is covered, or exactly what amount should be paid." |
| 11 | " . . . litigation is a very costly and time-consuming process . . ." |
| 12 | "The promise to defend the insured is one of the key promises of the insurance policy. In addition, insureds are concerned about the negative publicity litigation can bring." |
| 12 | "Claim professionals should have expert knowledge of insurance policy coverages, the law, and determination of damages." |
| 12 | "Other than the most sophisticated insurance buyers, insureds generally do not read their policies . . ." |
| 12 | ". . . the language of the insurance policy is normally drafted by the |

| | |
|---|---|
| | insurance company or the industry . . ." |
| 12 - 13 | ". . . the insurance company should ascertain that the policy terms and language are clear and unambiguous as they relate to a given loss before relying on these terms to deny any claim." |
| 13 | "When a claim is made and a coverage dispute arises, the nature and extent of the dispute must be fully disclosed and communicated to the insured, citing the relevant provisions in the policy." |
| 13 | "Coverage disputes are delicate and serious matters. The primary duty of the claim representative is to deliver the promise to pay. Therefore, the claim representative's chief task is to seek and find coverage, not to seek and find coverage controversies or to deny or dispute claims." |
| 13 | "Because of the personal relationship formed in an insurance transaction, the insurance company should not place its interests above the insured's." |
| 13 | "The claim professional handling claims should honor the company's obligations under the implied covenant of good faith and fair dealings." |
| 16 | ". . . claim representatives encounter and must seek to satisfy a variety of customers, even if some of them have conflicting interests. These customers include the insurance company, the insured, third-party claimants, service providers, regulators, and the general public." |
| 17 | "However, all honest and reputable insurers recognize that claims are an expected part of business and are to be paid fully and fairly. No honest and reputable insurer has either explicit or implicit "standing orders" to its claim department to delay or underpay claims." |
| 17 | "The insurance product is merely a conditional promise to perform. The insurance buyer does not know the true value of the product until there is a loss and the claim is made and adjusted." |
| 17 | ". . . the claim department is typically the final authority on coverage interpretation, underwriters can provide insight into individual risks and coverage interpretation . . ." |
| 18 | "It is to the insured that the insurance company owes the contractual obligation of utmost good faith and fair dealing." |
| 18 | "The insured should be able to trust the insurance company's claim representative. The claim representative must follow through with promises and be completely honest with the insured." |

| | |
|---|---|
| 19 | "Claim representatives handling first-party losses should promptly pay all amounts they know the insurer owes and should negotiate in a forthright, honest, and flexible manner over any amounts that are in dispute." |
| 21 | "With all service providers, the claim representative must provide clear and specific instructions as to the scope and limitation of the provider's assignment." |
| 21 | ". . . although these providers are hired for their expertise, the claim representative must know enough to evaluate the quality of their work." |
| 26 | "The claim professional must dispense his or her knowledge and skills for the benefit of society." |
| 28 | "Insurance companies provide such a vital and necessary service to society that the selling and servicing of insurance is imbued with a public trust." |

## CHAPTER 2 – THE CLAIM REPRESENTATIVE'S DUTIES

| | |
|---|---|
| 29 | ". . . the first task of the claim representative is to confirm or deny coverage." |
| 29 | ". . . prompt recognition and resolution of potential coverage problems are of utmost importance." |
| 29 | "Determining coverage may be very simple or extremely complicated depending on the specific facts of the case. An investigation must often be undertaken to fully develop the facts needed to determine coverage." |
| 29 | "Good faith claim practices require that this investigation be objective, thorough, and timely." |
| 30 | "Waiver is the relinquishment of a known right by the insurer that can be based on a written or oral agreement or can be implied from conduct. Estoppel results from the waiver. The insurer is estopped (prevented) from asserting a particular right because that right was waived." |
| 31 | "The insurance company's failure to advise the insured of the coverage problem at the beginning of the claim adjustment process will most likely prevent the company from now denying coverage to the insured. The insurer's delay implies a relinquishment of its right to reject coverage for claims occurring outside the policy period. As a result, the |

| | |
|---|---|
| | insurer will be estopped from exercising that right." |
| 31, 34 | "Nonwaiver Agreement. A nonwaiver agreement . . . is a written agreement that is signed by both the policyholder and a company claim representative. This agreement accomplishes two purposes: (1) it informs the policyholder that a specific coverage question exists, and (2) it protects the insurer from estoppel by specifically reserving its rights to later deny the claim. A nonwaiver agreement is probably the most reliable way to enter into an investigation without a fear of waiver or estoppel." |
| 31, 34 | "Reservation of Rights Letter. A reservation of rights letter . . . is a unilateral instrument by which the policyholder is notified of coverage questions by the claim representative. The letter does not state that the policyholder agrees to the reservation of rights. As with the nonwaiver agreement, the insurer is obligated to point out the specific nature of the coverage question and to advise the insured that the claim will be investigated by the insurer without agreeing to coverage.<br><br>Neither the nonwaiver agreement nor the reservation of rights letter gives the insurers a license to delay the claim handling. All issues of coverage must be investigated and quickly resolved." |
| 34 | ". . . most policies contain four parts: declarations, insuring agreements, conditions, and exclusions. These four parts contain the language that determines the rights and responsibilities of each party." |
| 38 | "The insured should also be notified when a claim may exceed the policy limits for liability coverages . . ." |
| 38 | "The Insurance company should notify the insured of potential excess exposures through an excess letter." |
| 41 | "Most policies are written to cover occurrences failing within the policy period." |
| 41 | ". . . the onset of the loss is most often the key point in time for determining whether or not a loss occurred within the period of coverage. This requirement applies not only to direct physical losses but also to most indirect losses." |
| 43 | ". . . outside counsel should not be the same attorney hired to defend the insured." |
| 43 | "The insurance company benefits from getting an attorney's opinion in several ways. First, seeking advice from counsel shows that the |

| | |
|---|---|
| | company considered the matter to be significant. Second, the insurer demonstrates that it cares enough to get the opinion of an objective, legal expert. Finally, a legal opinion may help insulate the company from claims of bad faith." |
| 44 | "The key is to make sure the denials are clear, concise, and supported by facts and the policy language." |
| 44 | "The decision on coverage should result from facts gathered during the investigation process." |
| 44 | "Claim representatives must not only obtain information but must attempt independently to verify and to compare that information with other available sources, such as police reports." |
| 44 | "Claims are seldom investigated too much." |
| 45 | "The clear implication of these provisions is that the insurer can and will investigate." |
| 45 | "Coverage is the first issue that must be investigated." |
| 54 | "A reserve is an estimation of the money that will eventually be paid for the costs associated with a claim." |
| 54 | ". . . One of the most important functions of the claim representative is the setting of timely and proper reserves." |
| 57 | "A basic assumption on which insureds and the public rely when purchasing an insurance policy is that money will be available at the time a claim is settled." |
| 59 | "The claim representative's primary duty is to fulfill the insurance company's promises to the insured." |
| 59 | ". . . policyholders generally do not understand all of the circumstances that are or are not covered in the policy." |
| 59 | ". . . claim representatives must have thorough and precise knowledge of coverages. Claim representatives must also verify coverage promptly." |

## CHAPTER 3 – HUMAN RELATIONS IN CLAIMS

| | |
|---|---|
| 64 | ". . . understanding the impact of the loss suffered by the claimant is |

| | |
|---|---|
| | the first and most important responsibility of the claim representative." |
| 66 | "The insurance product is unusual in that it is a promise rather than an exchange of goods for money. Insurance companies collect premiums and, in exchange, promise to reimburse the policyholder should certain events occur. The insurance contract is a legal contract of adhesion. The insurance company dictates the terms of the policy, and the insurance policy buyer simply "adheres" to them. That is, the policy buyer takes the policy with all its terms, conditions, and exclusions as they are. Prior to buying an insurance policy, the consumer has the power to shop among various insurance companies. However, once the insurance policy is bought and a loss occurs, the consumer must deal with one insurance company. This creates an imbalance of negotiating power at a time when the consumer's needs are greatest." |
| 66 | "Claim representatives can alleviate the claimant's fear and distrust of insurance companies by having the right attitude toward paying claims. Claim representatives should pride themselves on regarding claim payments as a normal and expected part of the insurance business and on making payments promptly and fairly.<br><br>All truly professional insurance claim representatives should hope that insureds and claimants seek representation because they truly need legal advice and representation, not because the insurance company mistreated them. Fear and distrust of insurance companies can be mitigated considerably by a competent, caring claim department." |
| 69 | "**The Insurer's Duties.** The insurer promises to protect the insured against economic loss due to a settlement or judgment and to defend the insured against lawsuits." |
| 69 | ". . . the insurance company must make sure that it always considers the best interests of its insured when settling or not settling claims, since the insured is dependent on the insurer for protection." |
| 69 | ". . . the insurer must advise the insured as soon as it foresees that there may be a judgment in excess of policy limits." |
| 82 | "The most prominent feelings of insureds and claimants are anxiety over their loss, doubt and uncertainty about the claim process, and fear and distrust of insurance companies." |

## CHAPTER 6 – TYPES OF CLAIM COMMUNICATIONS

| | |
|---|---|
| 148 | "An insurer's reporting requirements, including forms, format, content, and time for submission, are commonly detailed in the company's claim operating and procedures manuals . . ." |
| 149 | "Rules concerning whether a plaintiff may have access to material from a company claim file have, however, undergone considerable liberalization by the courts in recent years. Companies face more risks today than ever before of having their claim files scrutinized by a plaintiff, judge, or jury. As a result, claim representatives must exercise the utmost discretion in reporting their activities and evaluation in the claim file." |
| 149 | "Claim representatives should check with their supervisors or local defense counsel to be sure that they are not unwittingly exposing themselves and their companies to potential bad faith claims because of anything they put in a file." |

## CHAPTER 7 – THE NEGOTIATION PROCESS

| | |
|---|---|
| 181 | "Third-party claimants and their attorneys are also entitled to good service from an insurer. The consequences of not negotiating with third-party claimants or their attorneys are just as undesirable, if not more so, than not negotiating with policyholders." |
| 182 | "Good claim representatives recognize that negotiating is both an inevitable and highly desirable part of their work. They recognize that honest negotiation serves the best interests of all parties." |
| 183 | "Being open to negotiations demonstrates the claim representative's good faith attitude toward settlement." |
| 183 – 184 | "The claim representative must understand the factors that affect the value of claim in general. These factors are every consideration within the general subjects of coverage, liability, and damages. A claim representative cannot hope to understand the value of a given case unless he or she understands the fundamental issues that arise in every claim." |
| 186 | "From the beginning, good claim representatives let the other party know how the claim will be investigated, evaluated, and settled." |

| | |
|---|---|
| 186 | "The alternatives to settlement are generally as undesirable for insureds or claimants as they are for the insurance company. Nevertheless, this reality must be presented in very careful language; otherwise, it will sound as though the claim representative is threatening litigation." |
| 187 | "Realistic evaluations are so important to claim negotiations that a claim representative will fail unless he or she can make them." |
| 187 | "A claim representative must separately evaluate physical damage, injuries, liability and the quality of witnesses and other evidence to arrive at an overall evaluation of the claim. Numerous sources of information should be consulted in making these evaluations." |
| 187 | "A claim representative who fails to evaluate properly is almost certain to fail in negotiations." |
| 187 | "Proper evaluation throughout the life of a claim makes settlement easier." |
| 187 - 188 | "Estimates are only as good as the information and judgments that went into them." |
| 188 | "Claim representatives should try to identify more relevant factors that support general damages, such as the nature of the injury, the length of the condition, the extent to which the condition or injury interfered with daily activities, and the extent of disability from the injured party's work." |
| 188 | "Evaluation of liability tends to be more predictable than evaluation of general damages, but it is still quite subjective. Claim representatives should have confidence in their ability to evaluate liability, but they must remain open-minded to different assessments." |
| 189 | "The claimant in a third-party bodily injury claim is an especially important witness. The claim representative should give very careful consideration to how believable and sympathetic the claimant will seem to others. A strong claimant can cause a claim to be worth twice as much as that of a weak claimant in an otherwise similar case." |
| 190 | "After evaluating every aspect of a claim, including the credibility of the evidence, and after considering input from all available sources, the claim representative should be able to place a knowledgeable value on a claim. Most likely, the value will not be one precise number, but a range of values." |

| | |
|---|---|
| 190 – 191 | "Cases with a higher degree of uncertainty allow for more flexibility in negotiations." |
| 191 | "Even if power is not everything, it is certainly a major element of negotiations. Power is the ability to cause either good things or bad things to happen to other people. Those with power who know how to use it and how to refrain from using it have a great deal of influence over others." |
| 191 | "Claim representatives have a great deal of power." |
| 192 | "Negotiations do not occur unless both parties to the negotiations have some power. An utterly powerless person cannot negotiate with another." |
| 192 | "**The Power of Money.** Everyone who submits a claim to an insurance company wants money. Because the claim representative controls the money, he or she is in a great position of power. Yet, this power must be used wisely and appropriately to prevent problems for the claim representative and the insurance company. Claim representatives are required to disperse money according to the insurance policy terms. A claim representative who refuses to perform his or her role properly can suffer discipline or sanctions." |
| 192 | "**Waiting Power.** Insureds and claimants are usually much more eager than claim representatives to get claims resolved. Claim representatives can better afford to wait. The circumstance gives great power to claim representatives, but, as with money power, waiting power can be abused. Claim representatives who make insureds or claimants wait unnecessarily are likely to encounter hardened attitudes that make claim settlements more difficult and . . . are probably guilty of bad faith." |
| 194 | "**Litigating Power.** Litigating power has two different dimensions: (1) the financial and emotional resources necessary to conduct litigation and (2) the willingness to risk whatever verdict results from the litigation process." |
| 194 | "Most people are afraid to testify in court or even to appear for a sworn deposition." |
| 195 | "Claim personnel can develop litigation power." |
| 195 | "Claim representatives who make solid, realistic settlement offers on every appropriate case will settle most cases." |

| | |
|---|---|
| 196 | "Even among conscientious, professional claim personnel, there is a lower level of concern than there is in the person who has experienced the loss and needs indemnification." |
| 196 | "In general, a person who is less personally involved and cares less about a particular matter has power over the person who is personally involved and cares more. The person who cares more is willing to be more flexible and give more on other matters to get his or her way." |
| 196 | "Claims representatives should not abuse this power by delaying the claim, failing to make settlement when appropriate, or offering inadequate amounts in settlement." |
| 201 | "Power comes from money, but also from knowledge and from the abilities to wait and to litigate. Claim representatives have power based on being less personally involved in a claim than the party who suffered the loss." |

**CHAPTER 8 – NEGOTIATION STYLES**

| | |
|---|---|
| 214 | "One of the essential principles of the bad faith laws is that insurance companies should settle the claims they cover. Insurance companies should not deny coverage for, delay, or underpay claims they cover." |
| 214 | ". . . cooperative negotiating is not optional, it is virtually required by law." |
| 219 | "A charge of fraud is tantamount to a criminal accusation. Unless it can be proved, such a charge is defamatory and could cause the claim representative and insurer to be sued." |
| 219 | "The insured can be strictly held to the policy conditions and to strict proof of the amount of the loss. However, vigorous negotiation should not include settlement offers too low to be supported by the known facts of the case. An obviously low offer is equivalent to a verbal accusation of fraud." |
| 224 | "Claim representatives sometimes withdraw from negotiations to put pressure on the other party to alter his or her negotiating position." |
| 224 | "Claim representatives also have the power to outwait almost all claimants." |
| 224 | "A claim representative who withdraws from negotiations presents an impossible obstacle for most claimants." |

| | |
|---|---|
| 225 | "If the claimant or insured is not being especially unreasonable, withdrawal from negotiations by the claim representative is an oppressive tactic that is probably also illegal." |
| 229 | "The overriding ethical consideration in insurance claims involves achieving settlement. Negotiating claim settlements may be good business strategy and may be required by the law, but it is also an ethical obligation of claim representatives and insurance companies." |
| 229 | "The claim representative's purpose is to perform the insurance company's promises under the insurance policy. Thus, claim representatives have an ethical obligation to pay covered claims. The claim representative's ethical obligation to settle claims is also founded on the disproportionate bargaining power between the insured and the insurance company." |
| 229 | "Insurance companies have the wealth and power to resist claims until ordered by a court to pay. It is ethically unacceptable for the strong to take advantage of weaker parties. Claim representatives should settle claims on their merits, not according to the power of the parties." |
| 229 | "Before discovery, there is an opportunity to withhold or fabricate evidence, but claim representatives should never do so. Such deceit takes advantage of the other party and has no ethical justification. Likewise, because claim representatives have an ethical obligation to perform the policy, they must never knowingly misrepresent policy provisions or coverages." |
| 229 | "Lowballing is a negotiating tactic by which a claim representative knowingly offers far less than the merits of the claim warrant. Lowballing is undeniably effective in forcing claimants and insureds to accept settlements that may be lower than their claims deserve." |
| 229 - 230 | "Lowballing is ethically indefensible, even in response to an outrageously high settlement demand. As a tactic, lowballing may be effective in altering outrageous demands, yet it remains ethically unsupportable." |
| 230 | "A claim representative can avoid making outrageous demands by addressing the merits of the claim and making realistic settlement offers." |
| 230 | "Confrontational negotiating in characterized by unreasonableness, reluctance to make concessions, and personal attacks." |

| | |
|---|---|
| 230 | "Confrontational negotiating has obvious disadvantages: it often causes negotiations to break down, is stressful for the parties, and is likely to constitute bad faith if practices by claim representatives." |

## CHAPTER 9 – BAD FAITH: EXCESS VERDICTS

| | |
|---|---|
| 235 | "**Definitions**. . . . Bad faith: the opposite of 'good faith,' generally implying or involving actual or constructive fraud, a design to mislead or deceive another, or a neglect or refusal to fulfill some good faith duty or some contractual good faith obligation." |
| 238 | "The legal system is slow and expensive. It may take months or even years to see a case through the court system. Tens and even hundreds of thousands of dollars may be spent in legal fees, fees for experts, and other litigation expenses. These costs are more than almost any claimant or insured could realistically afford." |
| 238 | "The insured must rely on the good faith of the insurer to decide whether a claim is covered under the policy. If, for whatever reason, an insurer decides that the insured or the claim is not covered, a tremendous financial burden falls on the insured." |
| 238 | "In the past, some overzealous claim representatives, in trying to reach a 'good settlement,' have been guilty of taking advantage of uninformed claimants." |
| 238 | "Insurers have denied coverage to insureds simply because claim managers did not believe that the insureds would fight the decision in court." |
| 249 | "Good claim handling alone is not enough to avoid bad faith claims. Supporting evidence must be in the file to establish that the good work was indeed done. If the documentation is not in the file, then it can only be assumed that nothing happened. The absence of good log notes, correspondence, and investigative and evaluative material is another indicator that the claim representatives were not doing their job properly." |
| 249 | "Avoiding bad faith claims requires little more than the basics of good claim handling – prompt, knowledgeable, and thorough investigation, evaluation, and settlement – and special considerations for negotiating and settling cases worth more than or near to the policy limits and for keeping the insured informed. |

| | |
|---|---|
| 257 – 258 | "The evaluation must be based on the evidence and should not be arbitrary. A statement by a claim representative in the file such as, 'I think the case is worth $50,000,' with no rationale or logic behind it, carries little weight. An opinion without any basis is just a wild guess." |
| 259 | "The object of the evaluation is to try to determine what a reasonable group of jurors in a given jurisdiction would decide in a trial. The claim representative should not try to guess how much money it will take to convince an attorney to settle a case." |
| 260 | "Claim representatives are expected to have good reasons for their decisions. Those reasons should be clearly explained in the file." |
| 261 | "Claim representatives should evaluate the claim fairly and make offers consistent with the evidence and documentation in the file." |
| 268 | "As the trial draws closer, the attorney's analysis of the case may become progressively more pessimistic . . ." |

**CHAPTER 10 – BAD FAITH: UNFAIR PRACTICES**

| | |
|---|---|
| 273 | "In recent years, state legislatures have passed unfair claims settlement practices acts. These laws codify and forbid many of the specific wrongful practices by insurers that courts previously condemned." |
| 274 | "When an insurance company fails to pay claims it owes or engages in other wrongful practices, contractual damages are inadequate. It is hardly a penalty to require an insurer to pay the insured what it owed all along." |
| 274 | "Courts have reasoned that a special relationship exists between an insurer and an insured." |
| 274 | "The insurance contract is one in which the insurer accepts premium from the policyholder and in return promises to pay for covered losses should any occur." |
| 276 | "Lawsuits for improper handling of claims have existed from the early days of insurance (the eighteenth and nineteenth centuries) in the United States." |
| 277 – 278 | "The following legal concepts espoused by these courts have become the building blocks for the development of bad faith law as it now exists: |

| | |
|---|---|
| | 1. All insurance contracts contain a covenant of good faith and fair dealing. |
| | 2. If bad faith is a tort in a third-party claim, it should be a tort in a first party claim as well. |
| | 3. Insurance is a matter of public interest and deserves special consideration by the courts to protect the public. |
| | 4. Insurance contracts are not like other contracts because insurers have an advantage in bargaining power. Insurers should therefore be held to a higher standard of care. |
| | 5. Recovery for breach of an insurance contract should not be limited to payment of the original claim. |
| | 6. The public's expectations are elevated by insurers' advertising, slogans, and promises, which give policyholders the impression that they will be taken care of no matter what happens. |
| | 7. Policyholders buy peace of mind and are not seeking commercial advantage when they buy a policy. In addition, they are vulnerable at the time of the loss. |
| | 8. Policy language is sometimes difficult to understand. The benefit of interpretation should be given to the policyholder." |
| 297 | "Most jurors have little knowledge about insurance company procedures." |
| 300 | "Upper management also has a responsibility to maintain proper claim-handling standards and practices." |
| 300 | "Each company, no matter how large or small, is accountable for the actions of its claim representatives and supervisors. Without proper training, insurance companies cannot be confident that their claim representatives and supervisors are handling claims responsibly." |
| 301 | "Most companies have a set of operating procedures that are circulated to all offices. Those procedures have detailed instructions on how to handle almost every type of claim." |
| 309 | "Bad faith claim denials and wrongful practices became recognized as torts because of the special relationship between insurers and insureds." |

## CHAPTER 11 – CLAIM MANAGEMENT

| | |
|---|---|
| 340 | "The standard for documentation is that the file should speak for itself." |

## CHAPTER 13 – CLAIM PROFESSIONALISM

| | |
|---|---|
| 374 | ". . . claim departments exist to provide customer service." |
| 374 | "The terms of insurance contracts are complex." |
| 374 | "The claim department, and specifically the claim representative, is responsible for assisting people in presenting their claims to the insurance company." |
| 374 - 375 | "It is beyond policy requirements but within the duties of the professional claim representative to provide promptly all benefits due the policyholder under the terms of the contract, provided there are no indications of fraud." |
| 375 | "The insured or claimant needs the claim representative's expertise and guidance. Claim representatives see hundreds, if not thousands, of losses in a career without being personally involved in them." |
| 375 | "For a time following a loss, people often experience a period during which rational decision making is impaired . . . The professional claim representative should be there to help." |
| 382 | "Claim representatives should make decisions based on the best interests of their customers. Anytime a claim representative allows the pursuit of his or her personal interests to interfere with the customer's interests, a conflict of interest exists." |
| 383 | "Each favor or gratuity that the claim representative accepts influences his or her decision-making ability." |
| 386 | "Customers who are unfamiliar with insurance depend on the claim representative's expertise." |
| 389 | "Claim representatives should be expert in matters of insurance coverage, legal liability, damages, and methods of repair." |

Exhibit 4 - Textbook excerpts

**EXCERPTS FROM**

***CLAIMS LEADERSHIP AND ORGANIZATIONAL ALIGNMENT***

(1st Ed. 2013)
The Institutes' AIC Claims Designation Program
Edited by Martin J. Frappolli and Ann E. Myhr

## PREFACE

| | |
|---|---|
| vii | "How can insurance professionals ensure that people, processes, and tools are aligned with their organizational mission?" |
| vii | "Written from a claims perspective, this text is designed to help claims practitioners develop in a leadership role." |

## CHAPTER 1 – THE ALIGNED ORGANIZATION

| | |
|---|---|
| 1.14 | "Not only does thorough, consistent communication from management ensure that employees are actively engaged with the organization's overall objectives, but it also empowers employees..." |
| 1.14 | "Performance management systems summarize performance status information from multiple sources. They enable management to monitor both changes in financial results and progress toward key operational targets that are linked to strategic plans and goals." |
| 1.14 | "Performance management scorecards generate reports showing metrics that are designated as key performance indicators (KPIs). KPIs define and measure progress toward organizational goals." |

## CHAPTER 3 – ALIGNING CLAIMS WITHING THE INSURANCE ORGANIZATION

| | |
|---|---|
| 3.4 | "An insurance policy is a promise to make a payment to, or on behalf of, the insured if a covered event occurs. The purpose of the claims function is to fulfill the insurer's promise. To that end, the claims function is staffed by employees who are trained in the skills necessary to evaluate and settle claims and to negotiate or litigate the settlement of claims by or against insureds through the claim handling process." |
| 3.4 | "Insurers have developed expertise in claim handling in all categories of loss exposures. Therefore, many insurance industry practitioners view claim handling as the primary service that insurers provide." |
| 3.8 | "An outcome of the claim function is a vast amount of information that is essential to an insurer's marketing, underwriting, and actuarial departments." |

| | |
|---|---|
| 3.8 | "When establishing goals for the claim function, senior management should recognize the effect the claim function has on both the insurance customer and the insurer itself. The claim function has these two primary goals:<br>• Complying with the contractual promise<br>• Supporting the insurer's financial goals" |
| 3.8 | "From the insurer's perspective, claims are expected, and claim representatives must deal with them routinely. For the individuals involved, the loss occurrence and its consequences are not routine and can be overwhelming. Claim representatives, therefore, routinely deal with insureds and claimants in stressful situations. A claim representative should handle a claim in a way that treats all parties involved fairly and equitably, and do so in a timely manner." |
| 3.8 | "The first goal of the claim function is to satisfy the insurer's obligations to the insured as set forth in the insurance policy...The insurer fulfills this promise by providing fair, prompt, and equitable service to the insured, either (1) directly, when the loss involves a first-party claim made by the insured against the insurer, or (2) indirectly, by handling a third-party claim made by someone against the insured to whom the insured might be liable." |
| 3.9 | "The second goal of the claim function is supporting the insurer's financial goal. Achieving this goal is generally the responsibility of the marketing and underwriting departments. However, it would be shortsighted not to recognize the role of the claim function in helping insurers achieve an underwriting profit by controlling expenses and paying only legitimate claims." |
| 3.9 | "By managing all claim function expenses, setting appropriate spending policies, and using appropriately priced providers and services, claim managers can help maintain an insurer's underwriting profit. Similarly, claim staff can avoid overspending on costs of handling claims, claim operations, or other expenses." |
| 3.9 | "...underpaid claims can result in dissatisfied insureds, litigation, or regulatory oversight...Mishandled claims can lead to litigation or regulatory oversight, both of which erode goodwill and generate increased insurer expenses, thereby reducing the insurer's profitability." |
| 3.9 | "An insurer's success in achieving its financial goal is reflected in its reputation for providing the service promised. A reputation for resisting legitimate claims can undermine the effectiveness of insurer advertisements or its goodwill earned over the years. Consequently, the two goals of the claim function work together to help bring about a profitable insurance operation." |

**CHAPTER 6 – Managing the Claims Function**

| | |
|---|---|
| 6.5 | "To deliver the insurer's promises at all times in good faith, a claims department should have its own claim philosophy honoring the duty of good faith and fair dealing, independent of departments that do not perform the claim function. For example, if tighter control over loss ratios is needed, it must occur to a large extent at the underwriting stage by taking on appropriate risks for an appropriate premium amount." |
| 6.5 | "Problems can occur if the claim philosophy is not clearly communicated and monitored by claim management." |
| 6.5 | "Indications of how well an organization's claim philosophy has been communicated are found by monitoring employees who perform the claim function. Monitoring can be done in numerous ways, such as by performing claim audits at frequent intervals or by surveying customers whose claims have recently been closed. Reviewing customer complaints made to the organization or a state's department of insurance can also be useful." |
| 6.5 | "Organizations with a successful claim function have a claim philosophy that is well defined and carefully drafted to support and comply with their overall mission and strategy. An aligned claim philosophy typically includes providing high-quality claim service to an organization's customers while effectively controlling costs." |
| 6.11 | "Organizational metrics involve monitoring quantitative information to assess the performance of the claims department and of individual claim representatives. Claim trends can have a substantial impact on an organization. The quantitative information usually monitored across the claims department includes the number of new, closed, and reopened claims. The department's closing ratios, the percentage of claims that are litigated, and averages for the amounts of reserves, claim costs, and expense costs are also monitored. Monitoring these metrics at monthly or at shorter intervals can alert claim management of emerging problem areas." |

**CHAPTER 7 – Creating Competitive Advantage**

| | |
|---|---|
| 7.17 | "An organization achieves a competitive advantage by having a consistently higher profitability than its competitors. Business strategies for achieving competitive advantage can be categorized as cost leadership or differentiation strategies." |
| 7.17 | Organizations that pursue strategies based on cost leadership seek to compete by being the low-cost leader for a product or service in a particular market. Cost-reduction measures allow an organization to produce its products or services at a lower cost than its competitors and, therefore, to |

| | |
|---|---|
| | offer its products and services at a lower price.” |
| 7.17 | “Cost leadership is not without risks.” |
| 7.18 | “Insurers using a cost leadership strategy may adopt measures such as these to lower costs in their claims departments:<br><br>• Advanced analytics — Data can be used to forecast claim outcomes, resulting in more efficient claim management and resource allocation and more accurate estimation of reserves.<br><br>• Supplier management — A unified strategy to manage suppliers can reduce costs and improve customer service.<br><br>• Legal cost controls — Using data analysis, a consistent approach can be developed for selecting law firms and managing litigation; predictive modeling can be used to match resources to types of case in litigation, resulting in greater efficiency and lower litigation costs.<br><br>• Technology planning — A strategy for investing in up-to-date technology can enhance the efficiency of claim operations.<br><br>• Fraud detection—Advanced fraud-detection tools and procedures can reduce losses by immediately alerting claim handlers to potentially fraudulent claims.” |
| 7.18 | “However, any attempts to support a cost leadership strategy by reducing amounts paid out for covered losses should be avoided; such action may constitute bad faith.” |

**CHAPTER 9 – Claim Decision Support**

| | |
|---|---|
| 9.3 | “Insurers recognize that improving the claims management process can generate significant savings. Claims managers' decisions regarding budgets, staffing, and claims handling procedures have a significant effect on an insurer's bottom line. These decisions should be aligned with and support the insurer's business objectives. However, they also need to be aligned with the principles of good-faith claims handling.” |
| 9.3 | “Most insurers have a written claims philosophy. This is typically a broad statement regarding the insurer's promise to pay promptly what is due to its insureds. This promise is the insurance product. It is essential that the promise of the insurance contract never be forgotten during claims management. Claims managers should ensure that this promise is reflected in all their decisions and communications with claims staff.” |
| 9.4 | “Claims managers should be careful when communicating business |

| | |
|---|---|
| | objectives such as profit or loss ratio targets. The case Nardelli v. MetLife, which is summarized in the exhibit, demonstrates the potential consequences for an insurer if claims representatives put profit goals ahead of providing what the policy promises the insured." |
| 9.5 | "Nardelli v. MetLife: A Cautionary Tale...the court found that punitive damages were warranted because of MetLife's aggressive pursuit of profit and 'conscious disregard of the Nardellis' rights and the injury that might result.' There was evidence that managers had frequently told claims representatives that they had to meet an aggressive profit target. Additionally, the court found that MetLife managers did nothing to monitor claims representatives to ensure that attempting to meet the profit target did not affect MetLife's responsibility to treat its insureds fairly." |
| 9.4 | "Instead of communicating specific financial objectives to their staff, managers should communicate claims best practices that guide cost-effective, but fair, claims management. Claims managers should also communicate with the insurer's executives regarding whether objectives are realistic, such as a specific loss ratio. Underwriters are responsible for selecting profitable business, and the insurer's senior managers should have realistic claims information to evaluate an account or a portfolio." |
| 9.4 | "Claims managers are responsible for implementing decisions on claims management principles and practices that align with the insurer's business objectives. In addition to effectively communicating decisions, managers are typically responsible for training claims staff in the insurer's systems and procedures, as well as in relevant laws and regulations." |
| 9.8 | "Claims managers and executives must closely monitor the performance of the claims function to meet business objectives." |
| 9.18 | "Claims leakage is an increase in claim payments from the amount that would have been paid if a claim was handled according to established procedures and practices. Unlike predictive modeling, leakage analysis involves reviewing closed claims.<br><br>These are typical examples of claims handling that result in leakage:<br><br>• Claim was paid without investigation.<br>• Fraud indicators were not investigated.<br>• Documentation was not obtained to support a loss or payment.<br>• There was no analysis to support the settlement amount.<br>• Recovery opportunities were not investigated or pursued. |

- A vendor other than an approved vendor was used.
- Appropriate authorizations were not obtained for claims actions.
- Supervisory review did not occur or was inadequate."

9.33 "Claims managers' decisions have a significant effect on business results and should be aligned with their insurers' objectives. However, these decisions and objectives must be carefully communicated to claims staff to be certain that good-faith claims handling is not compromised."

# EXCERPTS FROM
## *MANAGING BODILY INJURY CLAIMS*
(2nd Ed. 2001, Ninth Printing 2007)
Insurance Institute of America
Edited by James R. Jones, Junie Maggio, and Barry Gustin

**PREFACE**

| | |
|---|---|
| vii. | "This text is one of two for the Associate in Claims (AIC) 34 course. The goal of this text is to provide some guidance on how to meet the changing needs of injury claim management. Although many of the techniques and studies included in this text are related to workers compensation claims, the information and case studies presented in this text can be applied to all bodily injury claims." |
| viii. | "Claim professionals dealing with casualty claims must understand not only the techniques for managing injury claims, but also the need to treat injured parties as individuals who have emotional as well as financial needs. To reduce complaints, contentiousness, and litigation, claim professionals must learn to use their compassion. Treating injured parties with respect and dignity is not inefficient or costly but rather an essential part of good injury claim management." |

**CHAPTER 2 – Injury and Treatment Evaluation**

| | |
|---|---|
| 2-2 | "In all cases, the claim representative bases the evaluation on medical bills, records, and reports. Claim representatives must therefore be familiar with the preparation, contents, maintenance, and significance of those documents." |
| 2-40 | "Despite well-founded concerns, IMEs can be effective cost-cutting tools. However, IMEs are often misused. The following are some common problems undermining the effectiveness of IMEs:<br><br>• IME monotony. The insurer may choose the same doctor(s) all the time. Compensation boards give little credibility to doctors whose opinions are repeatedly paraded out by insurers. Ideally, doctors chosen for IMEs should derive only a fraction of their income from such consultations, having a substantial practice from ongoing treatment of their own patients.<br><br>• Choosing an "insurance company doctor" (physicians who do a great deal of work for insurers) may give claim representatives the opinion sought, but these practitioners generally have no more |

credibility in court than a known claimant-oriented physician.

• Using unqualified physicians. If the treating physician or the claimant's expert is board-certified, the IME doctor must have comparable credentials. Some doctors have subspecialties. A claim representative should not send a back-injury claimant to an eminent hand specialist just because that doctor is an orthopedist.

• Failure to provide adequate background information to the IME physician. Copies of all medical records should be sent to the IME doctor well before the appointment. This will lend more credence to the doctor's opinion. Few tactics undermine an IME more than opposing counsel revealing that the consulting doctor did not have the benefit of the complete medical history. If credibility or causation issues exist in a claim, the background material need not be limited to medical records, but may also include statements from the claimant, supervisor, and witnesses.

• Poor communication with the IME physician. Form letters have the virtue of efficiency, but the cover letter to the consulting doctor must be adapted to the needs of a particular case. It should address questions such as the following: What is the purpose of the IME? What is the claim representative's prime concern? What major issues does the claim representative want the doctor to address in the medical report? Does the claim representative want to speak with the doctor before the doctor commits his or her impressions to paper? The claim representative must clearly explain his or her expectations to the IME physician in the cover letter."

**EXCERPTS FROM:**

***CLAIM BASICS***
(3rd Ed. 2006)*
Claims Continuing Education Course
*As of 2016, DOI approved text for Continuing Education in all 50 states
Kaplan Financial Education

## Introduction

| | |
|---|---|
| v. | "Welcome to your new career as an insurance claim professional and to this course, *Claim Basics*. Before you delve further into this course, let's look more closely at its title and consider what it is that you'll be studying. The term **basics** is obvious, of course. That's another term for **fundamentals** or **starting points**." |
| v. | "You may not be totally familiar with the word **claim**, however. As used here, it refers to **a demand for payment for a loss that is due or believed to be due under the terms of an insurance contract.** When such a demand is made to the insurance company, it begins a unique process unlike that undertaken by any other business or profession." |
| v. | "Insurance claim management is an important and prestigious profession involving interesting and sometimes unusual situations that can require a wide variety of tasks. It's also a highly responsible position that requires important decisions that can greatly impact the financial affairs of the insurance company, its policyholders and others." |
| v-vi. | "The individuals in the Claim Department who manage claims are known by various titles. One of the oldest and most commonly known is **claim adjuster**. This title is derived from the word "adjust," which can be defined as *bringing to a more satisfactory state; settling; resolving*. ...we prefer the title **claim professional.** It's all encompassing and, most importantly, it expresses the goal that all claim people should set for themselves: professionalism." |
| vi. | "After completing this course; you should be able to:<br>• Explain how a Claim Department operates and how other departments in the company contribute to the claims function<br>• State what skills and resources are required for claim handling<br>• Identify the elements of the claim handling process<br>• Describe common procedures involved in investigating, evaluating and disposing of claims |

- Explain the importance of various ethical issues in claim handling"

**Unit 1 – The Claims Function**

| | |
|---|---|
| 2 | "In this first unit of *Claim Basics*, you will learn about the important role the claim department and claim professionals play in an insurance company. We'll also discuss how other departments in an insurance company contribute to the claims function. " |
| 2 | "Insurance policies provide a way for people to buy the protection they need against potential financial loss so they can feel more secure and have peace of mind. And, like any other business, insurance companies have the goal of making money." |
| 2 | "However, none of those answers tell us the main reason why insurance companies are in business, which is: **to fulfill the promises made in their insurance policies to pay claims for losses that are covered under those policies.**" |
| 3 | "Consumers buy insurance policies to protect themselves against financial loss. Instead of using their own funds to pay for damages arising out of a house fire, auto accident, lawsuit, or other loss, they transfer the responsibility for paying for these damages to the insurance company in exchange for a premium. The insurance company pools the premiums it receives to pay its insureds' covered losses." |

**Unit 2 – Claim Handling Skills**

| | |
|---|---|
| 24 | "Claim handlers deal with insureds and claimants during times that are often traumatic and stressful for them. Some of them have been physically injured, perhaps very seriously. Others have lost property they value very much. At the same time, insureds and claimants want action on their claims. They expect the company to fulfill the promises made in their insurance policies, and they want it done quickly, correctly and courteously. " |
| 24 | "For each claim, a claim handler must determine whether insurance is in force, the loss is covered and payment is owed. To make these decisions, the claim handler needs a great deal of technical knowledge, including:<br>• The ability to interpret and apply provisions in various types of insurance policies<br>• An understanding of the legal principles that relate to insurance |

- Specialized knowledge related to certain types of claims, such as damage estimating and medical terminology"

## Unit 3 – Claim Investigation

| | |
|---|---|
| 44 | "**The claim handling process** begins when a claim is reported to the insurance company.... "<br><br>"**Primary Functions of the Claim Handling Process**<br><br>"After the insurance company receives notice of a claim and assigns it to a claim handler, the claim is investigated, evaluated and disposed of. These three primary functions of the claim handling process are followed to some degree for every claim, regardless of whether the claim is a small first party claim or a large third party claim" |

## Unit 5 – Ethical Issues in Claim Handling

| | |
|---|---|
| 82-83 | "When claim handlers act in good faith, they:<br><br>• Conduct investigations, evaluations and dispositions to the best of their abilities<br><br>• Make every effort to avoid mistakes<br><br>• Keep in close contact with insureds, claimants or their attorneys, and other parties involved in the claim and respond to phone calls and correspondence as soon as reasonably possible<br><br>• Keep insureds and claimants or their attorneys informed about the status of their claims and explain what is happening with regard to resolution of their claims<br><br>• Treat all parties involved in a claim with fairness and compassion — never discriminating, making unfair demands or taking unfair advantage of them in any way<br><br>• Are careful not to overlook important facts about the claim<br><br>• Keep accurate and complete records of everything that transpires during the handling of a claim<br><br>• Never provide false information, manipulate records or reports or do anything illegal or unethical that could result in liability against the insurer<br><br>• Describe the reasons behind compromise offers to insureds and |

claimants

- Discuss the insured's rights and obligations under the insurance policy
- Pay each claim due under each coverage of the policy as soon as it is clear that the claim is covered; make final settlement as soon as reasonably possible
- Check with their supervisors when they have questions about a claim; seek management review when it appears a claim should be denied
- Explain the reasons for claim denials to insureds and claimants
- Discuss coverages and benefits available to insureds under the policy"

84 "The following actions by a claim handler can cause legal problems and result in a bad faith lawsuit against the insurer:

- Failing to promptly and adequately investigate or evaluate a claim
- Not interpreting policy coverages correctly
- Failing to disclose to a party being interviewed over the phone that the conversation is being recorded; failing to obtain that person's permission to make the recording
- Not communicating promptly or adequately with insureds or their attorneys or failing to advise them of developments on the claim
- Disclosing confidential or otherwise sensitive information without proper authorization
- Not maintaining a complete and accurate claim file
- For claims that are covered in full or in part, failing to make a reasonable settlement offer and properly dispose of the claim
- Failing to explain coverages and benefits available to insureds under the policy."